# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY CASTILLO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>F.B. HAWS,<br><br>　　　　　Respondent. | Case No. 1:12-cv-00302-LJO-BAM  HC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING  THAT THE COURT DENY THE PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254 |

Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, contends that (1) his rights under the Fifth Amendment to the U.S. Constitution were violated when police officers questioned him despite his lack of understanding that he could refuse to answer questions; and (2) by failing to ask Petitioner about his arrest or whether he understood his rights, trial counsel's assistance was ineffective, violating Petitioner's Sixth Amendment right to counsel.

**I.    Factual Background**

> Theodore Betts and Gabriel Martin lived together in a remote area of Raymond, Madera County [, California].  Martin and Betts had a large amount of marijuana at their home.  On March 21, 2005, an SUV pulled into Martin and Betts's driveway.  A young woman, Marissa Rubianes, was driving.

///

Rubianes asked Martin if he knew of an apartment or house for rent in the area. Martin said he did not and asked her to turn the car around and leave. As Rubianes started to back up, two men, Anthony Burciaga and Anthony Mendez, jumped out of the back of the SUV holding guns. Burciaga ordered Martin to keep his dog away and told Martin to walk back toward the house. Burciaga was pointing a shotgun at Martin.

When Martin, Burciaga, and Mendez got close to the house, Betts came out with a shotgun. Burciaga shoved Martin and ran toward the back of the house. Betts told Martin to go get another gun and Martin ran inside the house.

Martin was inside the house reaching for a rifle when he heard a shotgun blast coming from the back of the house. Betts came inside, stating he had been shot. Martin went outside, did not see anyone, and fired a round into the air. Martin then went inside to call 911. Betts bled to death at the scene. Burciaga and Mendez were arrested a short distance from the shooting.

On the day of the shooting, [Petitioner] provided a statement to law enforcement. [Petitioner] told officers that around March 2004, a friend of his had told him that he knew a man who had a lot of marijuana and that [Petitioner] should go and get it. The friend, Bob, told [Petitioner] that it would be easy to take the marijuana because the man who had it was in a wheelchair, could be tied up, and no one would have to be hurt. Bob said the man had 200 to 300 pounds of marijuana on the side of his house.

About two months later in May 2004, Bob drove [Petitioner] to the man's house to show [Petitioner] where it was located. Later, [Petitioner] went to the man's house by himself to be sure he remembered the location. On March 20, 2005, [Petitioner] and Bob discussed the marijuana with Burciaga. Bob asked [Petitioner] and Burciaga to steal the marijuana; they agreed. [Petitioner] claimed Burciaga "took care of it from there."

On March 21, 2005, [Petitioner], Burciaga, and Mendez were in the SUV with Rubianes. [Petitioner] acknowledged seeing the shotgun and pistol in the car. When they got to the Martin and Betts property, Burciaga and Mendez got out of the car. [Petitioner] was lying down on the back seat.

[Petitioner] heard a commotion and sat up. He saw Burciaga and Mendez walking Martin toward the house. [Petitioner] stepped out of the car. At this point, Betts came out of the house pointing a gun. [Petitioner] heard Martin saying, "no, no" to Betts.

[Petitioner,] Rubianes, Burciaga, and Mendez were charged with murder. The special circumstance that the murder was committed in the course of a robbery was alleged. It was also alleged the Burciaga personally and intentionally discharged a firearm; Mendez personally used a firearm; and as to [Petitioner] and Rubianes, a principal was armed with a firearm.

> The trial court severed the trials so that Burciaga and Rubianes were tried together and [Petitioner] and Mendez were tried together.
>
> On April 8, 2008, the jury found [Petitioner] guilty of first degree murder and found true the special circumstance that he was a major participant and acted with reckless disregard for human life while committing a robbery. The jury also found true the special allegation that a principal was armed with a firearm.
>
> A jury also convicted Mendez and Burciaga of murder and the special circumstance and firearm allegation were found true as to both [*sic*]. Rubianes was acquitted.
>
> [Petitioner] was sentenced to a term of life without possibility of parole.
>
> *People v. Castillo* (F055493) (Cal. Ct. App. June 29, 2009), Lodged Doc. 8 at 1-4.

## II.   Procedural Background

A criminal complaint filed March 23, 2005, and amended March 24, 2005, charged Petitioner and three co-defendants with (1) murder (Cal. Penal Code § 187(a)) and (2) robbery (Cal. Penal Code § 190.2(a)(17)). On June 19, 2007, Petitioner moved to suppress the March 24, 2005, statement he made to police after his arraignment but before the appointment of counsel to represent him (Petitioner's second statement). The district attorney conceded that Petitioner's second statement was inadmissible in the People's case in chief, and the trial court granted the motion on July 16, 2007.

Petitioner and co-defendant Mendez were tried before a jury on March 26 and 27, and April 1, 2, 3, and 8, 2008. On April 8, 2008, the jury found Petitioner guilty of the first degree murder of Theodore Betts (Cal. Penal Code § 187(a)). The jury found true the special circumstances that (1) Petitioner was a major participant in the crime and acted with reckless indifference in the commission of robbery (Cal. Penal Code § 190.2(a)(17)), and (2) Petitioner was armed with a firearm (shotgun (Cal. Penal Code § 12022(a)(1)). On June 3, 2008, the trial judge sentenced Petitioner to life imprisonment without possibility of parole.

Petitioner filed a notice of appeal on June 10, 2008, contending that (1) the felony murder special circumstance should be reversed because the evidence was insufficient to determine that Petitioner was a major participant in the attempted robbery and that he acted with reckless

1    indifference to life, and (2) defense counsel's concession that Petitioner was a major participant in
2    the attempted robbery constituted ineffective assistance of counsel.  The Court of Appeals denied
3    the appeal on June 29, 2009.

4    On August 11, 2009, Petitioner filed a petition for review in the California Supreme
5    Court, contending that (1) the felony murder special circumstance should be reversed because the
6    evidence was insufficient to determine that Petitioner was a major participant in the attempted
7    robbery and that he acted with reckless indifference to life, and (2) defense counsel's concession
8    that Petitioner was a major participant in the attempted robbery constituted ineffective assistance
9    of counsel.  The Supreme Court denied the petition for review on October 19, 2009.

10   On November 3, 2009, Petitioner filed a petition for writ of habeas corpus in the Madera
11   County Superior Court, contending that (1) Petitioner's confession was obtained without a valid
12   waiver of his right to counsel and (2) the assistance of trial counsel was ineffective because (a)
13   counsel conceded in his closing that Petitioner was a major participant in the attempted robbery
14   and (b) counsel failed to seek exclusion of Petitioner's confession, which was obtained without
15   Petitioner's waiver of his right to counsel.  On July 23, 2010, the Superior Court conducted an
16   evidentiary hearing at which Petitioner and his trial counsel, Randall Shrout, testified.  The
17   Superior Court denied the petition on September 17, 2010.

18   Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on
19   December 2, 2010.  The Court of Appeals summarily denied the petition on December 14, 2010.

20   On June 30, 2011, Petitioner filed a petition for writ of habeas corpus in the California
21   Supreme Court.  The Supreme Court summarily denied the petition on January 25, 2012.

22   **II.     Standard of Review**

23   Habeas corpus is neither a substitute for a direct appeal nor a device for federal review
24   of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332
25   n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme
26   malfunctions" in state criminal justice proceedings.  *Id.*  Under the Antiterrorism and Effective
27   Death Penalty Act of 1996 ("AEDPA"), a petitioner can prevail only if he can show that the
28   state court's adjudication of his claim (1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

///

5

**III.     No Waiver of Right to Counsel**

Petitioner contends that he did not understand his rights under *Miranda v. Arizona* (384 U.S. 436 (1966)) and never waived those rights before the questioning that led to his first statement to police. Respondent counters that the Superior Court reasonably determined that Petitioner nonverbally waived his right to counsel before he answered the questions of sheriff's officers.

**A.     Defendant's First Statement**

The transcript of Petitioner's statement begins with Detective John Grayson reading Petitioner his *Miranda* rights and asking him whether he understood them. The transcript does not indicate that Petitioner replied. Grayson then stated, "Okay," and proceeded to question Petitioner, who responded.

Before the prosecutor played the recording of Petitioner's statement during trial, Grayson testified that before speaking with Petitioner following his arrest, he read Petitioner "his rights from a department-issued Miranda card," and asked Petitioner if he understood. Reporter's Transcript (April 1, 2008) at 2847. According to Grayson, Petitioner confirmed that he understood his rights. Reporter's Transcript (April 1, 2008) at 2847-48.

In a declaration, Petitioner's appellate counsel, Sharon Wrubel, stated that she did not raise a *Miranda* issue on appeal because she was unable to establish that Petitioner did not nonverbally indicate his understanding of his rights.

At the evidentiary hearing before the Superior Court, Petitioner's counsel, Randall Shrout, testified that although he brought a successful motion to suppress Petitioner's second statement to sheriff's deputies, he did not move to suppress the first statement, explaining:

> I don't think I did because in discussing with [Petitioner] all the statements and stuff, I believe we discussed the parameters of the statements and whether he said "yes" or "no" and why the verbal "yes" wasn't on the recording. I believe he told me that he nodded his head.

Reporter's transcript (July 23, 2010) at 9.

Shrout admitted that he lacked clear recollection of the interview, testifying that he had reviewed his records and did not have "specific notes of [Petitioner] saying that in the first

6

1  statement I did cooperate or said 'yes' to law enforcement."  Reporter's Transcript (July 23, 2010)

2  at 10.  He added, however, that it would not have made sense to have brought a motion to

3  suppress the second statement, but not to seek to suppress the first statement, unless he had

4  information indicating that Petitioner had waived his right to counsel and proceeded voluntarily.

5     In his testimony at the evidentiary hearing, Petitioner denied that he shook his head to

6  indicate his understanding after Grayson read the *Miranda* warnings to Petitioner and asked

7  whether he understood.  Petitioner also testified that he never discussed his first statement with

8  Shrout.  He denied ever telling Shrout that he shook his head to indicate his understanding after

9  Grayson read his Miranda rights.

10    **B.     Superior Court's Denial of Habeas Petition**

11    In its denial of the habeas petition, the Superior Court concluded that Petitioner's *Miranda*

12 rights were not violated in the course of his first statement:[1]

> [Petitioner's] conviction was affirmed on appeal to the Fifth District Court of Appeal. (F055493) Sharon Wrubel, petitioner's attorney on appeal, did not raise the Miranda issue because she could not establish that petitioner did not give a non-verbal indication he understood his Miranda rights. (Declaration of Wrubel attached to petition).  Detective Grayson testified at trial that petitioner understood his rights.  (RT 326:15-327:4)  Petitioner's statement was audio recorded, however, the transcript does not reflect that petitioner said he understood his rights. Mr. Shrout testified at the evidentiary hearing that he asked petitioner if he told Grayson he understood his rights.  Shrout then testified that petitioner told him that he nodded yes to Grayson indicating that he understood his rights.  At the hearing, petitioner denied nodding yes and denied that he told Shrout he had nodded yes.  This court finds that Mr. Shrout was credible and that the petitioner was not credible.  Mr. Shrout testified that had petitioner told him he had not nodded yes then he would have brought a motion to suppress the statement. But since petitioner told him he did nod yes then such a motion would not be proper.   Mr. Shrout knew the two statements were detrimental to his client and since he was successful in excluding one of them then he would have sought to suppress the other statement if it was proper.  Additionally, the interview between petitioner and Grayson suggested that petitioner nodded to Grayson indicating he understood his rights.  Right after Grayson asked petitioner is he understood "all that[,"] Grayson said "okay" indicating that Grayson was acknowledging petitioner's nod that he understood his rights,  Lastly, there was no indication from reading

---

[1] Because the California Court of Appeals and Supreme Court both summarily denied review of the state habeas petition, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the Madera County Superior Court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

7

>the transcript of the interview in its entirety that petitioner did not understand his rights or anything else covered by Grayson with petitioner in the interview.

Lodged Document 16: Order at 2 (September 17, 2010).

### C. The State Court's Credibility Determination

The first question requires a factual determination: Did Petitioner indicate his understanding of *Miranda* rights by nodding his head or another nonverbal response. The state court resolved the factual dispute against Petitioner, finding "that Mr. Shrout was credible and that the petitioner was not credible." Lodged Document 16: Order at 2 (September 17, 2010). Although reasonable minds could disagree on the parties' relative credibility, on habeas review this Court may not substitute its own credibility assessment for that of the state court. *See Rice v. Collins*, 546 U.S. 333, 335 (2006). The Superior Court's decision was a reasonable determination of the facts in light of the trial record and the testimony at the evidentiary hearing.

### D. Waiver of *Miranda* Rights

Even if Petitioner did not nonverbally indicate his understanding of his *Miranda* rights, established federal law supports the conclusion that Petitioner waived his rights.

Pursuant to *Miranda*, a person in custody must be informed before interrogation that he has a right to remain silent and to have a lawyer present. 384 U.S. 436. The decision formulated a warning to be given to all suspects before custodial interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). The transcript of Petitioner's first statement reflects that Grayson read the *Miranda* warnings to Petitioner before speaking with him. Thus, as in *Berghuis*, the issue here is not whether Grayson provided a *Miranda* warning, but whether Petitioner's response (or lack of response) constituted a waiver of those rights.

"An express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). *Miranda* holds that "full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process."

*Moran v. Burbine*, 475 U.S. 412, 427 (1986). Observing *Miranda*'s requirements is not a matter of form, but of whether the defendant has knowingly and voluntarily waived his rights. *Id.* This question is resolved based on "'the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Id.* at 374 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "A defendant's silence, coupled with a understanding of his rights and a course of conduct indicating waiver," is sufficient basis to conclude that a defendant has waived his rights. *Moran*, 475 U.S. at 373.

If a suspect intends to invoke his *Miranda* right to counsel, he must do so "unambiguously." *Berghuis*, 560 U.S. at 381 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). "If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation . . . or to ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights. *Id.* (quoting *Davis*, 512 U.S. at 461-62). "[T]here is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel." *Id.* Accordingly, the Supreme Court concluded that "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* at 388-89.

Considered as a whole, Petitioner's first statement includes nothing to suggest that Petitioner did not knowingly and voluntarily participate in the colloquy. Petitioner willingly recounted the participants' plan to rob Betts and Martin of their sizable marijuana stash, his anticipation that violence would not be required because the "old men" were disabled and unlikely to resist the theft, his surprise when Betts and Martin confronted the co-defendants with armed force, and his running from the scene when the shooting began.

### E.  Conclusion

The Superior Court reasonably resolved this claim factually by finding that Petitioner nonverbally confirmed his understanding of his *Miranda* rights. Even if Petitioner did not

///

nonverbally indicate his understanding, the Superior Court's conclusion that Petitioner waived his *Miranda* rights was reasonable under established federal law.

### IV.     **Ineffective Assistance of Counsel**

Petitioner contends that his Sixth Amendment right to counsel was violated by Shrout's ineffective assistance, specifically his failure to ask Petitioner about his arrest and whether he ever indicated to deputies that he did not understand his rights.  Although Respondent restates his position that this claim is unexhausted, in light of the Court's prior determination that the claim was presented to the state courts (*see* Doc. 26), he contends that Strout's assistance was appropriate in light of his knowledge that Petitioner had nonverbally indicated his understanding of his *Miranda* rights.

#### A.     **Standard of Review**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.  The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) prejudice.  Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697.  "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.*  If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

///

### B.  State Opinion

In his direct appeal and in the habeas petition before the California Superior Court, Petitioner contended that Shrout's ineffective assistance arose when he conceded in his closing argument that Petitioner was a major participant in the robbery. Petitioner does not raise the major participant issue, that his attorney conceded the issue, in his petition to this Court.

As previously discussed, the Madera County Superior Court rejected the factual basis for Petitioner's argument, concluding that Strout's testimony was the more credible. The California Supreme Court denied the petition for habeas corpus, citing *People v. Duvall*, 9 Cal.4th 464, 474 (1995) (holding that the petitioner bears the burden of pleading and proving adequate grounds for habeas relief). "If no prima facie case for relief is cited, the court will summarily deny the petition." *Id.* at 475. As a result, the California Supreme Court left undisturbed the Superior Court's determination that Strout's testimony that he had to have discussed the first statement was more credible than Petitioner's contrary testimony.

### C.  No Deficient Performance

The state courts reasonably concluded that the ineffective assistance claim could not prevail in light of the Superior Court's finding that Shrout's testimony was more credible than Petitioner's testimony. Although Shrout conceded that his notes neither supported nor disproved his recollection that Petitioner told him that he had nodded affirmatively to his understanding of his rights, Shrout reasoned that his memory must have been accurate since he brought a successful motion to suppress Petitioner's second statement to deputies but did not move to suppress Petitioner's first statement. A state court could reasonably have concluded that Strout's declining to bring a motion to suppress the first statement under these circumstance would have been consistent with California Rules of Professional Conduct §§ 5-200, 5-200A, & 5-200B, requiring counsel to employ only such means as are consistent with the truth and precluding counsel from misleading the court through artifice or false statements.

### D.  No Proof of Prejudice

In any event, because the Sixth Amendment guarantee of counsel is intended to ensure the reliability of the trial's outcome, "an error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691-92.  Merely showing that counsel's error had some conceivable effect on the outcome is insufficient: A petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have differed.  *Strickland*, 466 U.S. at 694.

Even if Petitioner's confession to participation in the planned robbery had been suppressed, the evidence against Petitioner and the two other gunmen in the robbery that led to Betts' murder was overwhelming.  Despite defense attempts to use the drug charges against Martin to impeach his credibility, Martin, an eyewitness, testified to the facts of the defendants' attempt to rob him and Betts that led to Betts' death.  Sheriff's deputies testified that they apprehended Petitioner and two other participants on roads in the vicinity of the murder, and recovered the abandoned weapons on a path leading from Betts' and Martin's ranch. The three male participants offered similar accounts of the planned robbery with the exception of which of them shot Betts.[2]  Because the conviction was for felony murder, the participant's differing accounts of who actually fired the fatal shotgun blast were immaterial to Petitioner's guilt as a major participant in the robbery.

### E.    Conclusion

The California Supreme Court reasonably rejected Petitioner's claim of ineffective assistance of counsel.

## V.    Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

---

[2] Rubianes, the get-away driver, was a juvenile on the date of the crime. The nature of her statement, if any, was not readily apparent from the record.

>    (b)   There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
>    (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which
>
>       (A)   the detention complained of arises out of process issued by a State court; or
>
>       (B)   the final order in a proceeding under section 2255.
>
>    (2)   A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>    (3)   The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability.

///

///

///

///

13

**VI.     Recommendation**

The undersigned recommends that the Court dismiss the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:    **November 19, 2015**            /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE

14